IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SONWEST CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| J. TERRON EVERTSON, *in his official capacity as* | § | |
| *Williamson County Engineer*; BILL GRAVELL, *in* | § | 1:20-CV-842-RP |
| *his official capacity as Williamson County Judge*; and | § | |
| TERRY COOK, CYNTHIA LONG, RUSS | § | |
| BOLES, and VALERIE COVEY, *in their official* | § | |
| *capacities as Williamson County Commissioners*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendant Bill Gravell, in his official capacity as Williamson County Judge, and Terry Cook, Cynthia Long, Valerie Covey, and Russ Boles, in their official capacities as Williamson County Commissioners (together "County Commissioners) and J. Terron Evertson, in his official capacity as Williamson County Engineer's ("Evertson" and all together, "Defendants") amended motion to dismiss Plaintiff SonWest Co.'s ("SonWest") amended complaint, (Dkt. 7). (Dkt. 8). Having considered the parties' submissions, the record, and the applicable law, the Court will grant in part and deny in part the motion.

**I. BACKGROUND**

SonWest alleges the following facts in its amended complaint. (Dkt. 7). SonWest is a neighborhood developer that submits planning documents, such as preliminary plat applications and construction plans, to Williamson County Engineer J. Terron Evertson ("Evertson") for its developments. (*Id.* at 1–2). Evertson's job is to review the plans for compliance with the Williamson County Subdivision Regulations ("WCSR") and recommend the plans to the Williamson County Commissioners Court ("Commissioners Court") if the plans comply with the WCSR. (*Id.* at 2)

1

(citing Dkt. 18-1, WCSR § 3.16). Only the Commissioners Court has the authority to grant a variance from the WCSR. (*Id.*) (citing WCSR §§ 3.25, 10.1). SonWest alleges that Evertson often requires SonWest to adjust its planned developments in ways that are not required by the WCSR and in ways that Evertson does not require of other developments, including WBW Development Group, LLC's ("WBW") Schwertner Ranch ("WBW development"). (*Id.* at 2–3).

Beginning in 2018, SonWest submitted its plans for the development Sonterra Section 13 ("Sonterra"), and subsequently modified its plans based on multiple rounds of Evertson's comments, followed by approval from the Commissioners Court of the preliminary and final plat, with additional review to "occur in the future." (*Id.* at 9–10). Beginning in 2019, SonWest similarly submitted and modified its plans for the development Rio Lobo based on Evertson's review, and in 2020 received approval from the Commissioners Court of the preliminary plat. (*Id.* at 9). In September 2019, the Commissioners Court approved the preliminary plat for the WBW development after comments from Evertson on the development. (*Id.* at 11). Sonterra and Rio Lobo are adjacent to each other and across the street from the WBW development. (*Id.* at 12). All three developments will include single-family homes of comparable square footage and lot size. (*Id.*).

Based on these allegations, SonWest seeks injunctive and declaratory relief under the Fourteenth Amendment of the United States Constitution and Article 1, Section 3 of the Texas Constitution and based on *ultra vires* acts under Texas law. (Am. Compl., Dkt. 7, at 37). Defendants filed a motion to dismiss each of the claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. Dismiss, Dkt. 8).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and

federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

Defendants filed a motion to dismiss the *ultra vires* claims against the County Commissioners based on lack of standing under Federal Rule of Civil Procedure 12(b)(1) and to dismiss each of the claims against Defendants under Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss, Dkt. 8).

### A. *Ultra Vires* Claims Against County Commissioners

Defendants move to dismiss the *ultra vires* claims against the County Commissioners for lack of standing (Dkt. 8). For standing, there must be: (1) an injury that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) the likelihood of redressability. *See Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009); *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012).

Under Texas law, a commissioners court has the authority to set certain subdivision requirements, including drainage specifications, but can only do so by an "order adopted and

4

entered in the minutes of the commissioners court, and after a notice is published in a newspaper of general circulation in the county." TEX. LOC. GOV'T CODE § 232.003. In Williamson County, the county engineer then "reviews the [Preliminary Plat] Application for compliance with these [Williamson County Subdivision] Regulations." WCSR § 3.16 If a preliminary plat application does not meet the WCSR, then the county engineer, Evertson provides "written comments and recommendations" to the property owner. WCSR § 3.17. "After all comments have been addressed and the required digital files received, the County Engineer will place the plat and, if necessary, a variance request on the next available Commissioner's Court agenda recommending approval." WCSR § 3.25.

SonWest alleges that the County Commissioners acted *ultra vires* by adopting drainage specifications for developments "through [Evertson]" without publishing notice or adopting an order. (Am. Compl., Dkt. 7, at 35). SonWest alleges that the County Commissioners "broadly directed [Evertson] to ensure that development did not result in road failure or increase expenses for Williamson County. [Evertson] interpreted this instruction as authorizing him to impose the additional drainage requirements outlined above for a disfavored developer like SonWest." (Am. Compl., Dkt. 7, at 36). SonWest further alleges that the County Commissioners did not correct Evertson when they were told Evertson was imposing additional drainage requirements, "therefore authoriz[ing]" the requirements without a written order or notice. (*Id.*). SonWest seeks a declaratory judgment that the drainage requirements are *ultra vires* acts by the County Commissioners and seeks a permanent injunction against their imposing drainage requirements without a written order and notice. (*Id.* at 36–37).

Defendants move to dismiss this claim against the County Commissioners for lack of redressability, relying on *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477 (Tex. 2018). In *Meyers*, the plaintiff asserted that a county commissioner was instructing the county engineer not to present plat

5

applications to the commissioners court. *Id.* at 479. In *Meyers*, the Texas Supreme Court held that there was no standing for an *ultra vires* claim against a commissioner for allegedly telling the county engineer to delay processing plat applications because the commissioners court had delegated its plat-processing responsibilities to the county engineer. *Id.* at 488 (stating that the county's regulations "designate the county engineer as the sole county official responsible for receiving all documentation and information that must be submitted with the plat application"). Because the commissioner had no legal authority over the processing of the applications, the plaintiff's requested relief against the commissioner would not redress its injury. (*Id.* at 487–88). Defendants compare this to SonWest's allegation that the County Commissioners are directing Evertson to apply drainage requirements. (Reply, Dkt. 10, at 2) (citing Am. Compl., Dkt. 7, at 36). Similar to *Meyers*, the Williamson County Commissioners Court has delegated the responsibility for processing plat applications and presenting them to the commissioners court to the county engineer. (WCSR §§ 3.16, 3.17, 3.25).

SonWest argues that its claim is against the entire Commissioners Court, whereas in *Meyers*, the plaintiff lacked standing against one commissioner because a single county commissioner did not have any "authority or responsibility with respect to processing plat applications until they reach[ed] the commissioners court, and even then, he only act[ed] as one member of five-person body." (Resp., Dkt. 9, at 4) (quoting *Meyer*, 548 S.W.3d at 488). However, the injunction SonWest seeks against the entire Commissioners Court would still not redress the alleged injury from Evertson's actions. (*Id.* at 3, 5).

Although the County Commissioners have the authority to create subdivision requirements, the allegations in SonWest's complaint do not describe actions by the County Commissioners to amend the subdivision requirements in the WCSR. Instead the County Commissioners "broadly directed" Evertson to prevent road failure and increased costs, and then did not correct Evertson

when *he* imposed drainage requirements. (Am. Compl., Dkt. 7, at 36). Had the County Commissioners directed Evertson to impose certain drainage requirements, that may have been closer to their authority to adopt regulations in the WCSR. But SonWest only alleges that the County Commissioners gave broad guidance about what the overarching goals of Evertson's review should be, and then did not interfere when Evertson imposed additional regulations in his review of the applications. SonWest's requested relief, that the County Commissioners comply with the notice and procedural requirements in amending the WCSR, cannot redress SonWest's injuries because the County Commissioners have not taken any action regarding the WCSR. *Meyers*, 548 S.W.3d at 488 ("[I]f . . . a plaintiff suing in a Texas court requests injunctive relief . . . but the injunction could not possibly remedy his situation, then he lacks standing to bring that claim.") (quoting *Heckman*, 369 S.W.3d at 155).

Any guidance the County Commissioners provided to Evertson about limiting costs or preventing road failure are more related to the general review of plat applications, which has been delegated to Evertson. These comments also resemble "public officials' communications regarding what is arguably a matter of public concern," which the Texas Supreme Court cautioned against limiting in *Meyers*. 548 S.W.3d at 489 (explaining plaintiffs may not "join as a defendant any government official who may have 'influence' over the primary actor with authority over the matter at issue"). *Id.* As a result, SonWest lacks standing to bring its claim against the County Commissioners.

### B. Equal Protection Claim Against Evertson

SonWest also brings claims against the county engineer, Evertson. The Equal Protection Clause can give rise to a cause of action on behalf of a "class of one," even when the plaintiff does not allege membership in a protected or "suspect" class or group. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Stratta v. Roe*, 961 F.3d 340, 360 (5th Cir. 2020). To state a claim sufficient for

relief, the single plaintiff must still allege that they received intentionally different treatment from others similarly situated. *Id.* In addition, a plaintiff must show a discriminatory purpose or intent on the part of the defendant in order to establish a valid equal protection claim. *Sonnier v. Quarterman*, 476 F.3d 349, 368 (5th Cir. 2007).

To establish a "class of one" claim, a plaintiff must show that (1) it was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) (citing *Olech*, 528 U.S. at 564). The Fifth Circuit recognizes adverse zoning permit decisions as one type of "class of one" claim a plaintiff may bring. *Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 685 (S.D. Tex. 2009) (citing *Mikeska v. City of Galveston*, 451 F.3d 376, 381 (5th Cir. 2006)).

SonWest asserts that it and WBW are similarly situated, and that Defendant Evertson's alleged differential treatment of the two gives rise to SonWest's class-of-one claim. (Am. Compl., Dkt. 7, at 11–12, 25–29). Whereas Defendants maintains that SonWest and WBW are not similarly situated, arguing that the complaint states only "'conclusory statements' devoid of any context." (Mot. Dismiss, Dkt. 8, at 10–12). However, the complaint pleads in detail how the subdivisions are similar and provides specific examples of how they were treated differently. The complaint describes how both developments are in the same area of Williamson County (across the street from one another), include similarly sized single-neighborhood homes, submitted their plat applications around similar times, and include several similar infrastructure features. (Resp., Dkt. 9, at 6) (citing Am. Compl., Dkt. 7). SonWest also includes a chart in its complaint, summarizing eight different examples where the developments were allegedly treated differently. (Am. Compl., Dkt. 7, at 4–6). For example, the chart explains that "[t]he County Engineer required SonWest to separate an embankment forming a detention pond from an embankment forming a roadway," whereas "WBW was permitted to build one, single purpose embankment for Schwertner Ranch's detention pond and

right-of-way." (*Id.* at 4). At the motion to dismiss stage, these allegations are sufficient for the Court to infer that the SonWest and WBW developments were similarly situated. *Md. Manor Assocs. v. City of Hous.*, 816 F. Supp. 2d 394, 404 (S.D. Tex. 2011) (denying a motion to dismiss where defendants did not establish that developments were not similarly situated in "a way that is relevant to the [defendant's] proffered justification for denying the permit application").

Additionally, "[t]o pass rational basis review, it is not sufficient for the state action merely to serve some legitimate government purpose. Instead, there must be some rational basis for the classification, which must serve legitimate state ends." *Newman Marchive P'ship, Inc. v. Hightower*, 349 Fed. Appx. 963, 965 (5th Cir. 2009). Defendants do not attempt to provide a rational basis for treating SonWest differently than WBW until their reply. (*See* Resp., Dkt. 8, at 9 ("[T]he County Engineer does not even attempt to offer a valid explanation for his different treatment of SonWest."); Reply, Dkt. 10, at 6). At which point, Defendants broadly offer that the different treatment "could have been related to the public health, safety, and welfare," or somewhat more specifically that "the topography may have been such that the comments provided to SonWest were intended to prevent flooding." (Reply, Dkt. 10, at 6, 7). If there are rational reasons related to public health or to flooding for the instances where SonWest alleges it was treated differently, the Court will consider evidence of those reasons as this case proceeds. However, at the motion to dismiss stage, SonWest has sufficiently alleged that the developments are similarly situated, and Defendants' arguments are insufficient to determine if there are rational reasons for this different treatment.

### C. *Ultra Vires* Claims Against Evertson

"To plead a claim for *ultra vires* government action, the plaintiff must allege that the [government] officer acted without legal authority or failed to perform a purely ministerial act." *Hous. Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 161 (Tex. 2016). "An *ultra vires* claim based on actions taken 'without legal authority' has two fundamental components: (1) authority

9

giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017).

SonWest alleges that "Evertson acted and continues to act without legal authority in granting variances without requiring an application for a variance or submitting requests for variances to the Commissioners Court for approval." (Am. Compl., Dkt. 7, at 33). SonWest provides examples of Evertson effectively granting variances to WBW developments that did not comply with the WCSR and permitting WBW to deviate from application requirements. (*Id.* at 34). SonWest seeks a declaratory judgment that Evertson commits an *ultra vires* act by referring a plat application to the County Commission that does not comply with the WCSR and seeks a permanent injunction prohibiting Evertson from approving such applications. (*Id.*).[1]

The WCSR grant Evertson the authority to review development applications for compliance with the WSCR. (WCSR §§3.16 ("The County Engineer will review the Applications for compliance with these regulations."); Resp., Dkt. 9, at 11; Am. Compl., Dkt. 7, at ¶139). SonWest argues that Evertson cannot approve a proposed subdivision unless it "has met every subdivision requirement or has obtained a variance" from the County Commission. (Resp., Dkt. 9, at 11); (Am. Compl., Dkt. 7, at ¶¶ 140–41) (citing WCSR §§ 3.22) ("No approval in any form including, but not limited to, the [County] Judge's signature or verbal Commissioner's Court action shall be given on any subdivision until the Owner has . . . met every subdivision requirement or has obtained a variance."); (*Id.* at 10.3) ("The decision of the Commissioner's Court whether to grant or deny a variance is at its complete discretion."). SonWest argues that Evertson approved WBW subdivisions that did not meet the

---

[1] Defendants make arguments about the comments Evertson provided to SonWest about its development, however SonWest's *ultra vires* claims against Evertson only alleges that Evertson acted improperly when it submitted WBW's application for approval. (Mot. Dismiss, Dkt. 8, at 14; *see* Am. Compl., Dkt. 7, at ¶ 146). Accordingly, the Court does not consider those arguments.

WSCR requirements without obtaining variances, thereby effectively approving variances. (Resp., Dkt. 9, at 11) (citing Am. Compl., Dkt. 7, at ¶¶ 142–45).

Defendants argue that the engineer's review process is discretionary and Evertson has discretion to "to interpret and apply the County's land-use regulations and approve plats." (Mot. Dismiss, Dkt. 8, at 14). Whereas SonWest argues that Evertson has only limited discretion under the WSCR and Texas law. (Resp., Dkt. 9, at 12) (citing *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)) ("[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself."). Only if a government officer has "absolute discretion—free decision-making without any constraints"—are *ultra vires* suits absolutely barred. *Houston Belt*, 487 S.W.3d at 163. Although Evertson may have some discretion in evaluating the applications, Defendants have not effectively countered SonWest's assertion that this discretion is limited by the requirement to submit an application for approval only if it meets the WCSR requirements. (*See* WCSR §§ 3.22). Similarly, Defendants have not countered SonWest's allegations that Evertson effectively granted variances for WBW developments by submitting them for approval, a duty not within Evertson's discretion. (*See id.* at 10.3). SonWest has plausibly pleaded that Evertson acted "without legal authority" beyond the bounds of his discretion.

Defendants also argue that because SonWest's *ultra vires* claim alleges only that Evertson improperly approved WBW's application, "SonWest has not properly alleged how Defendant Evertson acted unlawfully in applying the Williamson County Subdivision Regulations to SonWest." (Reply, Dkt. 10, at 8). The Court ordered parties to submit supplemental briefing regarding SonWest's standing to bring this claim. (Dkts. 23, 25, 26).

SonWest argues that it has standing under a competitive injury theory. (Dkt. 25). Competitive injuries have been recognized as sufficient to show injury-in-fact to support Article III

standing. *See, e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 433 (1998) (noting that the Supreme Court "routinely recognizes probable economic injury resulting from [governmental actions] that alter competitive conditions as sufficient to satisfy the [Article III 'injury-in-fact' requirement]," and any party "who is likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test") (quoting 3 K. Davis & R. Pierce, ADMINISTRATIVE LAW TREATISE 13–14 (3d ed. 1994)); *Siesta Vill. Mkt., LLC v. Perry*, No. CIV.A. 3:06-CV-0585-, 2007 WL 148731, at *6 (N.D. Tex. Jan. 22, 2007) (finding standing where intervenors "pleaded that they are placed at a competitive disadvantage in relation to out-of-state importers, who are free of regulatory burdens," allowing competitors to "to sell their products to Texas consumers at a lower cost"). Here, SonWest has alleged that county regulations are being applied impermissibly leniently to a competitor development across the street from its developments, which the Court can infer would place SonWest at a competitive disadvantage. This is sufficient to demonstrate an injury in fact. (Am. Compl., Dkt. 7, at 7–8) ("This unlawful discrimination has cost SonWest—and will continue to cost SonWest—millions of dollars and put SonWest at a significant competitive disadvantage."). This injury is fairly traceable to Evertson's alleged *ultra vires* acts regarding his review of applications and would be redressed by a permanent injunction against Evertson. (Am. Compl., Dkt. 7, at 34). SonWest has standing to bring this claim.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 8), is **GRANTED IN PART and DENIED IN PART**. SonWest's claim of *ultra vires* acts against the County Commissioners is **DISMISSED WITH PREJUDICE**. Defendants' motion is **DENIED** in all other respects.

**SIGNED** on May 11, 2021.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE